```
 1   UNITED STATES DISTRICT COURT

 2   DISTRICT OF CONNECTICUT

 3
     UNITED STATES OF AMERICA,  )
 4              Plaintiff,  )          NO: 3:13CR73(MPS)
                            )
 5   vs.                    )
                            )          April 12, 2013
 6   RBS SECURITIES JAPAN    )
     LIMITED,                )
 7              Defendants  )              PLEA
     _____
 8   UNITED STATES OF AMERICAN, )
                Plaintiff,  )
 9                          )          NO: 3:13CR74(MPS)
     vs.                    )
10                          )
     THE ROYAL BANK OF SCOTLAND )      April 12, 2013
11   PLC,                   )
                Defendant.  )              PLEA
12   _____
                            450 Main Street
13                      Hartford, Connecticut

14   B E F O R E:
             THE HONORABLE MICHAEL P. SHEA, U.S.D.J.
15
     A P P E A R A N C E S:
16   For the Government:        PATRICK F. STOKES,
                                Deputy Chief, Fraud Section
17                              GARY A. WINTERS, Trial Attorney
                                U.S. Department of Justice
18                              Criminal Division
                                1400 New York Ave., NW
19                              Bond Building
                                Washington, DC 20530
20
                                ERIC L. SCHLEEF, Esquire
21                              U.S. Department of Justice
                                Antitrust Division
22                              The Rookery Building
                                209 South LaSalle Street
23                              Suite 600
                                Chicago, IL 60604
24
     Court Reporter:            Martha C. Marshall, RMR, CRR
25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

```
 1
    A P P E A R A N C E S(Continued):
 2

 3
    For the Defendants:        DAVID RASKIN, ESQUIRE
 4                             ALEJANDRA de URIOSTE, ESQ.
                               BENJAMIN A. BERRINGER, ESQ.
 5                             Clifford Chance
                               31 West 52nd Street
 6                             New York, NY 10019

 7                             JOSEPH MARTINI, ESQUIRE
                               Wiggin & Dana
 8                             Two Stamford Plaza
                               281 Tresser Boulevard
 9                             Stamford, CT 06901

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good morning.  Please be seated

2    everyone.

3          We're here in two related matters today:  United

4    States versus The Royal Bank of Scotland PLC; and United

5    States versus RBS Securities Japan Limited.

6          Before I take appearances of counsel, I understand

7    that Mr. Raskin, along with two of his colleagues from the

8    firm of Clifford Chance, will be appearing pro hac vice on

9    behalf of the defendants.  I have received and reviewed

10   Mr. Martini's motion for them to appear pro hac vice, and I

11   find those motions to be in order, so that Mr. Raskin and his

12   colleagues may represent the defendants here today.  After

13   the cases are actually opened, the pro hac vice motions

14   should be filed forthwith.

15         With that, can I have aappearances, please?

16         MR. STOKES:  Good morning, your Honor.  Patrick

17   Stokes on behalf of the United States, the Fraud Section of

18   the Criminal Division.  Along with me is Gary Winters from

19   the Fraud Section of the Criminal Division, and Eric Schleef

20   from the Antitrust Division.

21         THE COURT:  Good morning, gentleman.  Welcome.

22         MR. RASKIN:  Good morning, your Honor.  I'm David

23   Raskin for both defendants in this case.  Ms. Alejandra De

24   Urioste is all the way on the end.  Ben Berringer is to her

25   right.  And then I'd also introduce the two corporate

1   representatives for today, your Honor.  Sheldon Goldfarb is

2   sitting next to Mr. Berringer.  He will be the corporate

3   representative for Royal Bank of Scotland Securities Japan.

4   And then Christopher Campbell is on the end.  He will be the

5   corporate representative for RBS PLC.

6          THE COURT:  Thank you, Mr. Raskin.

7          I also note for the record that Otto Rothi of the

8   U.S. Probation Office is with us in the courtroom today.

9   Good morning, Mr. Rothi.

10         RBS Securities Japan Limited has entered into a

11  comprehensive written plea agreement with the Government.

12  The plea agreement is a condition of, and is incorporated in,

13  a deferred prosecution agreement between The Royal Bank of

14  Scotland plc and the government.  RBS Securities Japan is a

15  wholly-owned subsidiary of RBS.  The deferred prosecution

16  agreement, or DPA, which has been provided to the Court,

17  resolves a broader criminal investigation focusing on

18  employees of RBS who allegedly participated in efforts to

19  manipulate benchmark interest rates.

20         RBS Securities Japan and RBS wish to waive their

21  right to indictment and to consent to having informations

22  filed against them.

23         The first information contains a single count of

24  wire fraud against RBS Securities Japan, in violation of

25  Title 18 United States Code Section 1343.

1        Count One of that information, or that proposed

2   information, alleges that the defendant devised and engaged

3   in a scheme to defraud counterparties to interest rate

4   derivatives trades placed on its behalf by secretly

5   manipulating the benchmark interest rates to which the

6   profitability of those trades was tied.  RBS Securities Japan

7   has agreed to waive venue and to plead guilty in the District

8   Court in Connecticut.  RBS's U.S. Headquarters is located in

9   Stamford, Connecticut.

10        The Court understands that RBS Securities Japan will

11  plead guilty to Count One.

12        The second information contains one count of wire

13  fraud, in violation of Title 18 United States Code Section

14  1343, and one count of price fixing, in violation of Title 15

15  United States Code Section 1, both against RBS.

16        Count One alleges that the defendant devised and

17  engaged in a scheme to defraud counterparties to interest

18  rate derivatives trades placed on its behalf by secretly

19  manipulating the benchmark interest rates to which the

20  profitability of those trades was tied.

21        Count Two alleges that the defendant entered into a

22  conspiracy to fix the price of derivative products tied to

23  benchmark interest rates by fixing the benchmark interest

24  rates, a key component of the price of the derivative

25  products.

1          I understand that RBS will plead not guilty to

2     Counts One and Two.

3          I'll first address the guilty plea, and then I'll

4     proceed to address the deferred prosecution agreement.

5          Before I do that, I'll just state for the record

6     that on March 12, 2013, I approved victim notification

7     procedures set forth by the government in correspondence

8     dated February 26, and then later supplemented by further

9     correspondence dated March 12th.  I did so, after having

10    found that the number of crime victims in these matters made

11    it impracticable to accord all of those victims the rights

12    described in Title 18 United States Code Section 3771(a), and

13    having further found that the notification proposal outlined

14    by the government constituted a reasonable procedure under

15    Section 3771(d)(2).  I will be filing two orders that

16    describe my findings and procedures in greater detail

17    following the opening of the cases.

18         Let me begin, however, by asking the Government

19    whether it received any requests by any victims to speak at

20    this proceeding following its notice indicating to victims

21    that they would have a right to speak at this proceeding?

22         MR. STOKES:  We did not, your Honor.

23         THE COURT:  Thank you.

24         All right.  Let me then begin with the guilty plea

25    that I understand RBS Securities Japan wishes to enter in

1   response to the proposed information against it.

2          Mr. Goldfarb, if you would please stand.

3          I'm going to actually begin by having Madame Clerk

4   place Mr. Goldfarb under oath.

5          Whereupon, Sheldon Goldfarb, having been duly sworn

6   by the Clerk, was examined and testified on his oath as

7   follow:

8          THE COURT:  Sir, could you please state your full

9   name and business address for the record.

10         MR. GOLDFARB:  Sheldon I. Goldfarb, 600 Washington

11  Boulevard, Stamford, Connecticut.

12         THE COURT:  And are you the general counsel of RBS

13  Americas?

14         MR. GOLDFARB:  Yes, I am.

15         THE COURT:  And it is my understanding that RBS

16  Securities Japan, through its Board of Directors, has duly

17  authorized you, as General Counsel for RBS Americas, to act

18  on its behalf in these proceedings.  Is that correct, sir?

19         MR. GOLDFARB:  That is correct, your Honor

20         THE COURT:  Sir, I need to tell you first that the

21  government has the right in any prosecution for perjury or

22  for false statements against the corporation, RBS Securities

23  Japan, to use against the corporation any statement that you

24  make under oath in these proceedings.  Do you understand

25  that?

1          MR. GOLDFARB:  Yes, I do.

2          THE COURT:  Sir, it's my understanding that the

3    Board of Directors of RBS Securities Japan has passed a

4    resolution that authorizes you to answer my questions today,

5    to execute necessary documents, and to speak for the

6    corporation for the purposes of carrying out the plea

7    agreement.  Is that correct, sir?

8          MR. GOLDFARB:  That's correct, your Honor.

9          THE COURT:  And have you seen a copy of that

10   resolution?

11         MR. GOLDFARB:  Yes, I have.

12         THE COURT:  And is that the document that's attached

13   as Exhibit 1 to the plea agreement?

14         MR. GOLDFARB:  Yes, it is.

15         THE COURT:  Now, sir, my understanding is that the

16   corporation contemplates consenting to be prosecuted by

17   what's known as an information rather than an indictment.  Is

18   that your understanding?

19         MR. GOLDFARB:  That is my understanding.

20         THE COURT:  And before I allow the corporation to do

21   that, I need to make sure that the corporation, through you,

22   fully understands the rights that it will be giving up.  All

23   right?

24         MR. GOLDFARB:  Yes.

25         THE COURT:  First, has the corporation received a

1   copy of the proposed information that the government proposes

2   to file against it.

3         MR. GOLDFARB:  We have, your Honor.

4         THE COURT:  And through you, does the corporation

5   understand the charge that is contained in the proposed

6   information?

7         MR. GOLDFARB:  We do.

8         THE COURT:  Has the corporation had an adequate

9   opportunity to consult with Mr. Raskin and his colleagues

10   about that charge?

11         MR. GOLDFARB:  We have.

12         THE COURT:  Does the corporation have any questions

13   for the Court about the proposed charge?

14         MR. GOLDFARB:  No, we don't.

15         THE COURT:  Let me just tell you a little bit about

16   the rights that you will be giving up should we proceed.

17         The corporation has a constitutional right to be

18   charged by an indictment returned by a Grand Jury rather than

19   an information filed by the Department of Justice.  The

20   corporation may waive that right and consent to being charged

21   by information of the Department of Justice, which is what

22   you're proposing to do here.

23         A grand jury consists of between 16 and 23 persons,

24   at least 12 of whom must find probable cause that the

25   corporation committed the offense with which it is charged

1    before an indictment can be returned.

2         The grand jury might or might not return an

3    indictment if the Government were to present evidence to it.

4          If the corporation decides to waive its right to an

5    indictment today, the grand jury will not hear the

6    government's evidence and will not decide if there is

7    probable cause to indict.  Instead, the charge will be

8    brought directly by the Department of Justice by way of

9    information.

10        Having heard all that, sir, does the corporation

11   wish to waive its right to an indictment?

12        MR. GOLDFARB:  Yes, we do, your Honor.

13        THE COURT:  Before I can accept that waiver, I must

14   make sure that the decision to waive the right to being

15   prosecuted by indictment has been knowingly and voluntarily

16   made.

17        First, has the corporation discussed the waiver of

18   indictment with Mr. Raskin and his colleagues?

19        MR. GOLDFARB:  We have.

20        THE COURT:  And have Mr. Raskin and his colleagues

21   answered all of the corporation's questions to its

22   satisfaction?

23        MR. GOLDFARB:  Yes, they have.

24        THE COURT:  Does the corporation have any questions

25   it wishes to ask me regarding the waiver of indictment?

1          MR. GOLDFARB:  No, your Honor.

2          THE COURT:  Does the corporation understand its

3     right to indictment by a grand jury?

4          MR. GOLDFARB:  Yes, we do.

5          THE COURT:  Have there been any threats made to

6     induce the corporation to waive its right to indictment?

7          MR. GOLDFARB:  No, there haven't.

8          THE COURT:  Have any promises been made to induce

9     the corporation to waive indictment, other than those

10    promises mentioned in the plea agreement letter and the

11    deferred prosecution agreement between the government and

12    RBS?

13         MR. GOLDFARB:  No, there haven't been.

14         THE COURT:  Are you aware of any reason why the

15    corporation's decision to waive indictment should not be

16    accepted by me in this case?

17         MR. GOLDFARB:  I am not aware of any.

18         THE COURT:  Sir, is your mind clear today?

19         MR. GOLDFARB:  Yes, it is.

20         THE COURT:  Is there anything that could be clouding

21    in any way your judgment or thinking that you're aware of?

22         MR. GOLDFARB:  No, there isn't.

23         THE COURT:  Do you understand that the corporation,

24    through you, is proposing to waive its constitutional right

25    to indictment?

1       MR. GOLDFARB:  Yes, I do.

2       THE COURT:  And, sir, have you been able to

3  communicate effectively with your counsel, Mr. Raskin?

4       MR. GOLDFARB:  Yes, I have.

5       THE COURT:  Are you aware of any reason why the

6  corporation should not waive its right to indictment?

7       MR. GOLDFARB:  I'm not.

8       THE COURT:  Mr. Raskin, are you wear of any such

9  reason?

10      MR. RASKIN:  No, your Honor.

11      THE COURT:  Mr. Goldfarb, are there any questions

12 you wish to ask me about waiving the indictment?

13      MR. GOLDFARB:  No, your Honor.

14      THE COURT:  Is there a waiver of indictment form?

15      MR. RASKIN:  There is.

16      THE COURT:  Let me ask that Mr. Goldfarb sign that

17 form and then it will be handed up to me.

18      MR. RASKIN:  I'm handing it to him now, your Honor.

19      THE COURT:  Thank you.

20      MR. STOKES:  Your Honor, if I may.  On the waiver of

21 indictment form, we've made some minor adjustments to the

22 standard waiver of indictment form that the Court uses in

23 this district to reflect that this is a corporation defendant

24 and not an individual.  So the Court's aware, it's slightly

25 modified.

1          THE COURT:  That's fine.  Thank you.

2          MR. RASKIN:  Mr. Goldfarb has signed it and I signed

3      it.  May I hand it up, your Honor?

4          THE COURT:  Yes.  If you would hand it to the

5      courtroom deputy, please.

6          (Hands.)

7          THE COURT:  All right.  For the record, I've been

8      handed a signed copy of the waiver of indictment form.  I

9      find it to be in order and I'm going to sign it right now.

10         I make a finding that the corporation's waiver of

11     its right to indictment has been knowingly and voluntarily

12     made and, therefore, the information against RBS Securities

13     Japan may be filed with the courtroom deputy.

14         MR. STOKES:  Your Honor, may I approach?

15         THE COURT:  Yes, you may.

16         MR. STOKES:  Your Honor, first, if I may, this is a

17     very small issue, but I just want to make sure that there's

18     no issue.

19         We spoke to counsel this morning about the criminal

20     information and the signature lines, we have identified for

21     the signature lines to the court and counsel and we have

22     signed the criminal information as opposed to the Chief of

23     the Fraud Section and the Chief of the New York Field Office

24     for Antitrust.  Their names are above the signature line.  We

25     understand from the U.S. Attorney's Office that that's not

1    while the typical practice, the U.S. Attorney signs here, it

2    is certainly appropriate.  We just want to make sure the

3    Court is aware of that.

4         THE COURT:  I'm sorry, I didn't hear.  Who did you

5    say signed the information?

6         MR. STOKES:  I signed it under Mr. McInerney's name,

7    and Mr. Schleef signed under who is Elizabeth Prewitt, now

8    the Acting Chief.  Deirdre McEvoy is no longer signing on the

9    document, but effectively she is in charge of this case for

10    the New York Field Office.

11         THE COURT:  Very well, thank you.

12         All right.  And for the record, the information

13    filed against RBS Securities Japan limited will be docketed

14    as case 3:13CR73.

15         Mr. Goldfarb and Mr. Raskin, we're now going to

16    proceed to the guilty plea which I understand RBS Securities

17    Japan intends to enter today.  In particular, I understand

18    that the corporation intends to plead guilty to Count One of

19    the information pursuant to a binding plea agreement under

20    Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

21    I will discuss the plea agreement in a moment.

22         Mr. Goldfarb, let me begin by asking you, have you

23    reviewed the proposed charge against RBS Securities Japan,

24    now the actually filed charge?

25         MR. GOLDFARB:  Yes, I have, your Honor.

1        THE COURT:  Have you had an opportunity to discuss

2   that charge with Mr. Raskin and his colleagues?

3        MR. GOLDFARB:  Yes, I have.

4        THE COURT:  Have they answered your questions to the

5   corporation's satisfaction?

6        MR. GOLDFARB:  Yes, they have.

7        THE COURT:  Do you, on behalf of the corporation,

8   understand the charge against the corporation?

9        MR. GOLDFARB:  I do.

10       THE COURT:  And you told me a while ago that your

11  mind is clear, that there's nothing clouding your judgment,

12  right?

13       MR. GOLDFARB:  Correct.

14       THE COURT:  Do you understand that the corporation,

15  through you, is proposing to waive its constitutional right

16  to trial and to plead guilty to the information?

17       MR. GOLDFARB:  I do, your Honor.

18       THE COURT:  Let me ask the Government to summarize

19  the Charge and the elements of Count One of the information.

20       Mr. Goldfarb, I would ask you to listen to what they

21  have to say because I'm going to have some questions for you

22  about it afterward.

23       Mr. Stokes.

24       MR. STOKES:  Yes, your Honor.

25       Count One of the criminal information charges RBS

1   Securities Japan Limited with committing wire fraud, which is

2   in violation of Title 18 United States Code Section 1343.

3   The elements of Count One are:

4           First, that there was a scheme or artifice to

5   defraud or to obtain money or property by materially false

6   and fraudulent pretenses, representations, or promises;

7           Second, that the defendant knowingly and willfully

8   participated in the scheme or artifice to defraud with the

9   intent to defraud; and

10          Third, that in furtherance of that scheme, the

11  defendant used or caused to be used an interstate or

12  international wire transmission.

13          THE COURT:  Thank you, Mr. Stokes.

14          Mr. Goldfarb, you've heard Mr. Stokes summarize the

15  elements of these offenses.  Do you understand the elements?

16          MR. GOLDFARB:  Yes, I do.

17          THE COURT:  Do you have any questions about them?

18          MR. GOLDFARB:  No, your Honor.

19          THE COURT:  Do you have any disagreement with the

20  elements as outlined by the government?

21          MR. GOLDFARB:  No.

22          THE COURT:  Now I'm going to ask Mr. Stokes to

23  summarize the maximum penalties, fines, forfeiture and

24  assessments in this case.

25          MR. STOKES:  Your Honor, the offense charged, wire

1   fraud, carries a maximum penalty of 5 years probation and a

2   fine of one million dollars.  The defendant in this case is

3   also RBS Securities Japan and is also subject to the

4   alternative fine provision of Title 18 United States Code

5   Section 3571, which provides a maximum fine of twice the

6   gross gain to the defendant, or twice the gross loss to

7   others, resulting from the offense, whichever's the greater.

8   The defendant is also subject under Title 18 United States

9   Code Section 3013 to a mandatory special assessment of

10  $400.

11        Restitution is also required typically under 18,

12  U.S.C, Section 3663A.  However, the penalty proposed to the

13  Court in our plea agreement does not include restitution, and

14  that is because, in the parties' view, and certainly counsel

15  and I have discussed this at length, Section 3663A of

16  subsection (c)(3)(B) we believe is applicable.  And that

17  subsection applies.  Says that the parties -- because

18  the facts -- I'm sorry.  Based on facts that are on the

19  record, determining complex issues of fact related to the

20  cause or amount of the victim's losses would complicate or

21  prolong the sentencing process to a degree that the need to

22  provide restitution to any victim is outweighed by the burden

23  on the sentencing process.  We believe that subsection

24  applies here and, therefore, the parties have agreed not to

25  include restitution.

1                    THE COURT:  Thank you, Mr. Stokes.

2                    Mr. Goldfarb, do you understand the maximum

3       penalties and other consequences Mr. Stokes has outlined?

4                    MR. GOLDFARB:  Yes, I do.

5                    THE COURT:  And do you agree with his summary of the

6       maximum penalties and other consequences?

7                    MR. GOLDFARB:  Yes, I do, your Honor.

8                    THE COURT:  And do you understand that in

9       determining a sentence in this case, the Court will have to

10      consider any applicable sentencing guideline range, as well

11      as any departure from that range, as well as the

12      appropriateness of imposing a non-guidelines sentence under

13      Title 18 United States Code Section 3553(a) in order to

14      fashion a sentence that is sufficient, but not greater than

15      necessary, to achieve the purposes of sentencing?

16                   MR. GOLDFARB:  Yes, I do.

17                   THE COURT:  And with regard to the rights that you

18      will be waiving today, first, do you understand that the

19      government has the right, in a prosecution for perjury or

20      false statement, to use against RBS Securities any statement

21      that are given by you today under oath?

22                   MR. GOLDFARB:  Yes, I do.

23                   THE COURT:  Do you understand that RBS Securities

24      Japan has the right to plead not guilty and to proceed to

25      trial?

1       MR. GOLDFARB:  Yes, I do.

2       THE COURT:  The corporation also has the right to a

3 speedy and public jury trial at which it would be presumed

4 innocent and the government would have the burden of proving

5 its guilt beyond a reasonable doubt.  And if the government

6 failed to meet that burden, the jury would have the duty to

7 return a verdict of not guilty.  Do you understand all of

8 that?

9       MR. GOLDFARB:  Yes, I do, your Honor.

10       THE COURT:  The corporation also has the right to be

11 represented by counsel at trial and at every other stage of

12 the proceeding, and at trial the corporation would be

13 protected from self-incrimination, would have the right

14 through its counsel to confront and cross-examine adverse

15 witnesses, to testify through its officers, agents and

16 employees, or to refuse to offer testimony, and to subpoena

17 and compel the attendance of witnesses on its behalf.  Do you

18 understand that?

19       MR. GOLDFARB:  Yes, I do.

20       THE COURT:  Do you understand that by pleading

21 guilty the corporation waives and gives up all of those

22 rights and that there will be no trial?

23       MR. GOLDFARB:  Yes, I do.

24       THE COURT:  Do you understand that if convicted

25 after trial, the corporation would have a right to appeal the

1 conviction?

2 MR. GOLDFARB: Yes, your Honor.

3 THE COURT: Do you understand that if the

4 corporation pleads guilty, there will be no right to appeal

5 the conviction?

6 MR. GOLDFARB: Yes.

7 THE COURT: Do you understand that the plea

8 agreement also contains an appeal waiver for the corporation?

9 MR. GOLDFARB: Yes.

10 THE COURT: And do you understand that the waiver

11 providess that RBS Securities agrees not to appeal or

12 collaterally attack the conviction or the sentence imposed on

13 Count One?

14 MR. GOLDFARB: Yes, your Honor.

15 THE COURT: Knowing all of that, does RBS Securities

16 Japan want to waive these rights and plead guilty in

17 accordance with the plea agreement?

18 MR. GOLDFARB: Yes, we do, your Honor.

19 THE COURT: Have you discussed these rights with the

20 corporation's counsel and the consequences of waiving them by

21 pleading guilty?

22 MR. GOLDFARB: Yes, we have.

23 THE COURT: Mr. Goldfarb, are you satisfied that the

24 corporation understands the constitutional rights that it is

25 waiving by pleading guilty?

1            MR. GOLDFARB:  Yes, I am.

2            THE COURT:  And, Mr. Raskin, are you satisfied as

3    well?

4            MR. RASKIN:  Yes, your Honor.

5            THE COURT:  I understand there's a written plea

6    agreement in this case which has already been executed.  Is

7    that right, Mr. Raskin?

8            MR. RASKIN:  Yes, your Honor.

9            THE COURT:  And, Mr. Goldfarb, have you had a chance

10   to read the plea agreement?

11           MR. GOLDFARB:  Yes, I have.

12           THE COURT:  Have you discussed it with Mr. Raskin

13   and his colleagues?

14           MR. GOLDFARB:  Yes, I have.

15           THE COURT:  And do you understand the agreement?

16           MR. GOLDFARB:  Yes, I do.

17           THE COURT:  Let me ask you to listen again as

18   Mr. Stokes summarizes the terms of that agreement.

19           MR. STOKES:  Your Honor, the parties have entered

20   into a binding agreement pursuant to Rule 11(c)(1)(C) of the

21   Federal Rules of Criminal Procedure.  The agreement recites

22   the constitutional rights the corporation is waiving as a

23   result of the proceeding and notes the corporation's

24   acknowledgement that it is guilty and that its plea is

25   voluntary.

1            In addition, the agreement provides:

2            That the defendant will pay a fine of 50 million

3    dollars, which can be paid by the parent corporation, The

4    Royal Bank of Scotland plc or, one or more related RBS

5    entities, consistent with the bank's policy and practice.

6            That the company will pay a special assessment of

7    $400.

8            That the company agrees not to appeal or

9    collaterally attack a conviction or sentence imposed on Count

10   One if that sentence does not exceed the penalties I just

11   mentioned before, and even if the Court uses a different

12   analysis than that described in the plea agreement.

13           That in the event the plea agreement is vacated, RBS

14   Securities Japan violates the plea agreement or the plea

15   agreement is withdrawn, the company agrees to waive any right

16   to challenge venue for this prosecution in the District of

17   Connecticut.

18           That the company agrees that, should its conviction

19   be vacated for any reason, it agrees to waive the defense of

20   statute of limitations to any prosecution relating to the

21   conduct in the Statement of Facts that is not time barred by

22   the statute of limitations on the date of the signing of this

23   plea agreement, including the effect of any tolling

24   agreements.

25           That the company's plea, if accepted by the Court,

1   satisfy its federal criminal liability for the charge in the

2   information and the conduct set forth in the Statement of

3   Facts, which is attached and incorporated into the agreement

4   as Exhibit 3.

5          That the company admits the truth and accuracy of

6   the Statement of Facts attached to and incorporated into this

7   agreement, again, Exhibit 3, which the Court can consider for

8   all purposes relating to the sentencing and penalty,

9   including the penalty proposed as part of this agreement,

10  pursuant to 11(c)(1)(C) of the Federal Rules of Criminal

11  Procedure.

12         And that RBS Securities Japan has received no other

13  promises beyond those set forth in the plea agreement and in

14  the deferred prosecution agreement between RBS and the

15  Criminal Division and Antitrust Division of the Department of

16  Justice in which the plea agreement is incorporated.

17         THE COURT:  Let me ask both Mr. Goldfarb and

18  Mr. Raskin whether you agree with what Mr. Stokes said is a

19  fair and accurate summary of the plea agreement?

20         MR. RASKIN:  It is a fair summary, your Honor.

21         MR. GOLDFARB:  Yes, I agree, your Honor.

22         THE COURT:  Other than the promises and provisions

23  recited by the government, has anyone made any other

24  promises, Mr. Goldfarb, that have caused RBS Securities Japan

25  to plead guilty?

1          MR. GOLDFARB:  No, your Honor.

2          THE COURT:  Has anyone threatened the company to

3     induce it to enter into this plea agreement?

4          MR. GOLDFARB:  No.

5          THE COURT:  Mr. Goldfarb, are you satisfied the

6     corporation understands the plea agreement?

7          MR. GOLDFARB:  Yes, I am, your Honor.

8          THE COURT:  And do you understand that I may accept

9     or reject a binding plea agreement under Rule 11(c)(1)(C) of

10     the Federal Rules of Criminal Procedure?

11          MR. GOLDFARB:  Yes, I do.

12          THE COURT:  If I decide to reject the agreement, my

13     duty is to inform the parties in open court:

14          First, that I am rejecting the agreement;

15          Second, that the corporation has an opportunity to

16     withdraw its plea of guilty; and

17          Third, if the corporation does not withdraw its

18     guilty plea, that I might dispose of the case less favorably

19     than the plea agreement contemplates.

20          Do you understand all of that?

21          MR. GOLDFARB:  Yes, I do, your Honor.

22          THE COURT:  If the Court decides to accept the plea

23     agreement, which is something I will not decide until after I

24     review what's known as the Presentence Investigation Report,

25     which I'll talk about in a few minutes, but if I decide to

1   accept the plea agreement ultimately, the parties agree

2   disposition will be set forth in the Court's judgment.

3          Do you understand that?

4          MR. GOLDFARB:  Yes, your Honor.

5          THE COURT:  I understand the parties have agreed on

6   a Statement of Facts which, as Mr. Stokes said, is attached

7   as Exhibit 3 to the plea agreement, which I'll discuss in a

8   minute.

9          Has RBS Securities Japan reviewed the Statement of

10  Facts which is attached as Exhibit 3 to the plea agreement?

11         MR. GOLDFARB:  Yes, we have, your Honor.

12         THE COURT:  And has it discussed the Statement of

13  Facts in Exhibit 3 with Mr. Raskin and his colleagues?

14         MR. GOLDFARB:  Yes, we have.

15         THE COURT:  Does the corporation agree to the

16  accuracy of the facts attributed to it in that Statement of

17  Facts attached as Exhibit 3 to the plea agreement?

18         MR. GOLDFARB:  We do, your Honor.

19         THE COURT:  Did the corporation engage in the

20  conduct described in the Statement of Facts?

21         MR. GOLDFARB:  Yes, it did.

22         THE COURT:  And did its employees referred to in the

23  Statement of Facts commit that conduct with the mental state

24  described in the Statement of Facts?

25         MR. GOLDFARB:  Yes, they did, your Honor.

1      THE COURT:  The government will now summarize the

2  Statement of Facts.

3      MR. STOKES:  Your Honor, since its inception in

4  approximately 1986, the London Interbank Offered Rate, or

5  LIBOR, has been a benchmark interest rate used in financial

6  markets around the world.  Futures, options, swaps, and other

7  derivative financial instruments traded in the

8  over-the-counter market and on exchanges worldwide are

9  settled based on LIBOR.

10      As the Court noted at the outset, RBS Securities

11  Japan is a wholly-owned subsidiary of RBS, the World Bank of

12  Scotland plc, that engages in investment banking operations,

13  including derivatives trading with its principal place of

14  business in Tokyo, Japan.  RBS, as an RBS Securities Japan

15  derivatives traders, are responsible for trading a variety of

16  financial instruments, some of which such as interest rates,

17  swaps, and forward rate agreements are tied to LIBOR.

18      At various times, from as early as 2006 through at

19  least 2010, certain RBS Securities Japan derivatives traders

20  engaged in a scheme to defraud RBS's counterparties by

21  secretly attempting to manipulate and manipulating Yen LIBOR.

22  They carried out the scheme by attempting to manipulate and

23  manipulating RBS's Yen LIBOR submissions.  Through

24  conduct, RBS Securities Japan derivatives traders sought to

25  influence, and on some occasions did influence, the published

1   Yen LIBOR rates by acting in concert with RBS's Yen LIBOR

2   submitters to provide false and misleading submissions to

3   Thomson Reuters, which were then incorporated into the

4   calculation of the final published Yen LIBOR rates.

5        RBS Securities Japan derivatives traders, including

6   a manager who had a derivatives trading book, engaged in this

7   conduct in order to benefit their trading positions and

8   thereby increase their profits and decrease their losses.

9        As these derivatives traders understood, they could

10  only achieve those goals at the expense of their

11  counterparties whose trading positions would be affected to

12  the same extent but in the opposite direction.  Derivatives

13  traders did not inform their counterparties that the traders

14  were engaging in efforts to manipulate the Yen benchmarks to

15  which the profitability of their trades was tied.

16       In particular, and as identified in the criminal

17  information, on or about October 5, 2009, an RBS Securities

18  Japan derivatives trader based in Tokyo, identified as

19  Trader-1 in the Statement of Facts, engaged in an electronic

20  chat with an RBS derivatives trader based in London regarding

21  RBS's Yen LIBOR submissions for that day.  Trader-1 asked

22  over a series of three messages "can you ask Submitter-1 if

23  he can lower his three month LIBOR?...by one basis

24  point...thanks."  The London derivatives trader responded to

25  Trader-1 over a series of three messages,

1    "yes...asking...done."  And in a separate, nearly

2    simultaneous electronic chat, the London derivatives trader

3    asked Submitter-1, "can you lower 3s LIBOR by one basis point

4    if possible... thanks," to which Submitter-1 responded, "ok."

5    RBS dropped its 3-month Yen LIBOR submission by one basis

6    point, tying it for the third lowest of all Contributor Panel

7    banks on that date.

8         In addition, your Honor, on that date as a result of

9    those chats there were wire submissions as set forth in the

10   criminal information that caused those, and those wire

11   transmissions transferred through international and

12   interstate wires, at least one of which passed through

13   servers located in the District of Connecticut in Stamford,

14   Connecticut.

15        RBS Securities Japan acknowledges that the wrongful

16   acts taken by its participating employees in this scheme in

17   furtherance of the misconduct that I described, were acting

18   within the scope of their employment at RBS Securities Japan,

19   and that these acts were done at least, in part, to benefit

20   RBS Securities Japan.

21        RBS Securities Japan in the Statement of Facts also

22   acknowledges that due to this misconduct the counterparties

23   derivatives transactions located in the United States,

24   including financial institutions, have been exposed to

25   substantial risk of loss and have suffered actual financial

1  loss.

2        THE COURT:  Thank you, Mr. Stokes.

3        Mr. Goldfarb, does RBS Securities Japan agree that

4  it engaged, through its employees, in the conduct that

5  Mr. Stokes just described?

6        MR. GOLDFARB:  Yes, we do, your Honor.

7        THE COURT:  And the factual summary Mr. Stokes just

8  gave indicates that at least one wire passed through servers

9  located in Stamford, Connecticut.  Nonetheless, the Court

10  understands that RBS Securities Japan is not challenging

11  venue in connection with its plea, is that right?

12        MR. GOLDFARB:  That is correct, your Honor.

13        THE COURT:  I think you indicated earlier that you

14  had a chance to read the charge set forth in the information,

15  is that right?

16        MR. GOLDFARB:  That is correct.

17        THE COURT:  And would you like now to have the

18  information read to you or do you waive the reading of the

19  information?

20        MR. GOLDFARB:  I will waive the reading, your

21  Honor.

22        THE COURT:  Let me ask Madame Clerk to put Mr.

23  Goldfarb, as the representative of RBS Securities Japan, to

24  plea.

25        THE CLERK:  In the case of the United States of

1    America versus RBS Securities Japan Limited, criminal number

2    3:13CR73(MPS), as to Count One of the Information charging

3    you with violation of Title 18 United States Code Section

4    1383, how do you plea?

5            MR. GOLDFARB:  Guilty.

6            THE CLERK:  Your Honor, the defendant has pled

7    guilty to Count One of the Information.

8            THE COURT:  Thank you.

9            On the basis of the answers given by RBS Securities

10   Japan's duly authorized representative to the Court's

11   questions, on the basis of the remarks of the corporation's

12   counsel, the remarks of the Justice Department attorney, and

13   the Statement of Facts agreed to by the parties and attached

14   to the plea agreement, I find that the defendant, RBS

15   Securities Japan Limited, is guilty of the offense charged.

16            I find that RBS Securities Japan understands the

17   charge against it in the information, and the maximum penalty

18   for that charge.

19            Understands its right to proceed to trial, and

20   further understands the constitutional rights it would have

21   had at such a trial.  I find that it is knowingly and

22   voluntarily giving up those rights and is pleading guilty

23   knowingly and voluntarily.

24            I find that the corporation has duly authorized and

25   appointed Shelton Goldfarb to enter this plea of guilty,

1   along with the waiver of indictment and the plea agreement.

2        The Court further finds that there's a factual

3   basis for the plea and a finding of guilt will enter.

4        With regard to sentencing, I will consider the

5   penalty that has been proposed under Rule 11(c)(1)(C) along

6   with all the information presented as part of the plea

7   agreement.  I recognize that as part of the plea agreement

8   the parties have agreed that a Presentence Report does not

9   have to be prepared.  Nevertheless, it's my practice, and

10  I've determined, that I will defer acceptance of the plea

11  agreement at this time, and that the probation office will

12  prepare a Presentence Report here.

13       What that means, Mr. Goldfarb, is that a probation

14  officer will prepare a Presentence Report regarding RBS

15  Securities Japan Limited, and this report will be submitted

16  to me to assist me in determining the appropriate sentence.

17  Please bear in mind that the Probation Office works for the

18  Court, not for the government.  So the corporation's

19  cooperation with the United States probation officer will be

20  generally beneficial.  Also, however, it's very important

21  that the corporation carefully discuss with Mr. Raskin and

22  his colleagues what it will say to the Probation Office

23  because of the importance of the report in the sentencing

24  process.  Anything that the corporation tells the probation

25  officer could have an impact on its sentence as well as other

1   consequences.  The corporation has the right to have

2   Mr. Raskin and his colleagues present during discussions with

3   the probation officer.

4           Do you understand all of that, sir?

5           MR. GOLDFARB:  Yes, I do, your Honor.

6           THE COURT:  The Court has set sentencing for July

7   8th, 2013, at 10:00.

8           Thank you, Mr. Goldfarb.

9           MR. STOKES:  Your Honor, I have the original plea

10  agreement here.  We've attached the original signature pages

11  behind the assembled signatures that we have on the faxed

12  pages.

13          THE COURT:  That may be filed at this time.

14          MR. RASKIN:  Your Honor, just with respect to the

15  July 8th date, as of the moment that date works for defense

16  counsel and Mr. Goldfarb.  There are a few loose ends for the

17  defendant with respect to potential collateral consequences

18  and exemptions that are being sought, and the timing of that

19  is not completely clear.  Obviously, if a delay is necessary,

20  we'll contact the Court, but just alerting the Court that

21  there is the potential that we may ask for a little more

22  time.  Right now that date is perfectly fine.

23          THE COURT:  Thank you for that information,

24  Mr. Raskin.

25          All right.  At this time we'll turn to the deferred

1    prosecution agreement with RBS, the parent.

2         Is Mr. Campbell here?

3         MR. RASKIN:  Mr. Campbell is here.

4         THE COURT:  Let me ask Madame Clerk to place

5    Mr. Campbell under oath.

6         Whereupon, Christopher Campbell, having been duly

7    sworn by the Clerk, was examined and testified on his oath as

8    follows:

9         THE COURT:  Mr. Campbell, if you please state your

10    full name and business address for the record.

11         MR. CAMPBELL:  Surely, your Honor.  My name is

12    Christopher James Campbell.  I'm general counsel for The

13    Royal Bank of Scotland Group based at Gogarburn in Edinburgh,

14    Scotland.

15         THE COURT:  Thank you, sir.

16         Sir, it's my understanding that RBS, through its

17    Board of Directors, has duly authorized you as its general

18    counsel to act on behalf of it in these proceeding, is that

19    correct?

20         MR. CAMPBELL:  That is correct, your Honor.

21         THE COURT:  And, sir, I need to inform you that the

22    government has a right in any prosecution for perjury or

23    false statements against the corporation, to use against the

24    corporation any statement that you make under oath in these

25    proceedings.  Do you understand that?

1          MR. CAMPBELL:  I do, your Honor.

2          THE COURT:  And, sir, it's my understanding that the

3     Board of Directors of RBS has adopted a resolution which is

4     attached as Attachment D to the deferred prosecution, that

5     authorizes you to answer my questions today, to execute any

6     necessary documents, and to speak for the corporation for the

7     purpose of carrying out the agreement, is that correct?

8          MR. CAMPBELL:  That is correct.

9          THE COURT:  It's my understanding that the

10    corporation wishes to consent to being prosecuted by way of

11    an information filed by the government rather than an

12    indictment.  Is that correct, sir?

13         MR. CAMPBELL:  That is correct.

14         THE COURT:  Has the corporation received a copy of

15    the information that the government proposes to file against

16    it?

17         MR. CAMPBELL:  It has, your Honor.

18         THE COURT:  And does the corporation understand the

19    charge that is contained in the proposed information?

20         MR. CAMPBELL:  It does.

21         THE COURT:  Has the corporation had an adequate

22    opportunity to consult with Mr. Raskin and his colleagues

23    about that charge?

24         MR. CAMPBELL:  It has, your Honor.

25         THE COURT:  Does the corporation have any questions

1   for me about the proposed charge?

2          MR. CAMPBELL:  We do not, your Honor.

3          THE COURT:  The corporation has a constitutional

4   right in this matter to be charged by an indictment returned

5   by a grand jury rather than an information file by the

6   Department of Justice.  The corporation may waive that right

7   and consent to being charged by the information of the

8   Department of Justice which is what the corporation is

9   proposing to do here.

10         As I mentioned earlier to Mr. Goldfarb, a grand jury

11  in our system consists of between 16 and 23 persons, at least

12  12 of whom would have to find probable cause that the

13  corporation committed the offense with which it is charged

14  before the grand jury could return an indictment.

15         The grand jury, after hearing the government's

16  evidence, might or might not return an indictment.

17         If the corporation decides to waive its right to an

18  indictment today, and if I make the necessary findings to

19  allow it to do that, the grand jury will not hear the

20  government's evidence and will not decide if there is

21  probable cause to indict.  Instead, the charge will be

22  brought directly by the Department of Justice by way of

23  information.

24         Having heard all that, does the corporation wish to

25  waive its right to an indictment?

1          MR. CAMPBELL:  It does, your Honor.

2          THE COURT:  Before I can accept that waiver, I need

3    to make sure that the decision is being made knowingly and

4    voluntarily, and for that purpose I need to ask you a few

5    more questions.

6          Has the corporation discussed the waiver of

7    indictment with Mr. Raskin and his colleagues?

8          MR. CAMPBELL:  It has, your Honor.

9          THE COURT:  Has Mr. Raskin and his colleagues

10   answered all the corporation's questions to its

11   satisfaction?

12         MR. CAMPBELL:  They have.

13         THE COURT:  Does the corporation have any questions

14   it wishes to ask me regarding the waiver of indictment?

15         MR. CAMPBELL:  It does not, your Honor.

16         THE COURT:  Does the corporation understand its

17   right to indictment by grand jury?

18         MR. CAMPBELL:  It does.

19         THE COURT:  Have any threats been made to induce the

20   corporation to waive indictment in this matter?

21         MR. CAMPBELL:  None whatsoever, your Honor.

22         THE COURT:  And have any promises been made to

23   induce the corporation to waive indictment other than the

24   promises mentioned in the plea agreement letter and the

25   deferred prosecution agreement?

1          MR. CAMPBELL:  None, your Honor.

2          THE COURT:  Are you aware of any reason why the

3   corporation's decision to waive indictment should not be

4   accepted in this case?

5          MR. CAMPBELL:  I am not.

6          THE COURT:  Mr. Raskin, are you aware of any such

7   reason?

8          MR. RASKIN:  No, your Honor.

9          THE COURT:  Sir, is your mind clear today?  Is there

10  anything that could affect or cloud your judgment?

11         MR. CAMPBELL:  No, there's not.  I'm perfectly

12  clear.

13         THE COURT:  And do you understand that the

14  corporation, through you, is proposing to waive its

15  constitutional right to indictment?

16         MR. CAMPBELL:  I do.

17         THE COURT:  Have you been able to communicate

18  effectively with Mr. Raskin about this matter?

19         MR. CAMPBELL:  I have, thank you, your Honor.

20         THE COURT:  And are you aware of any reason why the

21  corporation should not waive its right to indictment?

22         MR. CAMPBELL:  None, your Honor.

23         THE COURT:  Are there any questions you want to ask

24  me before we proceed?

25         MR. CAMPBELL:  No, thank you, your Honor.

1        THE COURT:  Is there a waiver of indictment form?

2        MR. RASKIN:  There is, your Honor.  I'm going to

3 present it to Mr. Campbell now for his signature.

4        MR. STOKES:  Your Honor, just for the record, we've

5 made the same exact changes to this form -- the same as what

6 we did with the RBS Securities Japan.

7        THE COURT:  Thank you, Mr. Stokes.

8        MR. RASKIN:  Your Honor, Mr. Campbell has signed, I

9 have signed, and now may I present it to the clerk?

10        THE COURT:  Yes.

11        (Hands.)

12        THE COURT:  All right.  I have the waiver of

13 indictment form which has been signed by counsel and by a

14 duly authorized corporate representative.  I'm signing it

15 now.

16        I make a finding that the corporation's waiver of

17 its right to indictment has been knowingly and voluntarily

18 made.

19        The information against RBS may be filed.  It will

20 be docketed as 13CR74.

21        MR. STOKES:  May I hand this up?

22        THE COURT:  Yes, you may.

23        (Hands.)

24        THE COURT:  All right.  Mr. Campbell, we'll now

25 proceed to the deferred prosecution agreement.

1          I understand that it's RBS's intention to plead not

2   guilty to Counts One and Two of the information and, further,

3   that RBS and the government have entered into a deferred

4   prosecution agreement.

5          Just briefly to go over the charges.

6          Sir, have you reviewed the now filed charge against

7   RBS?

8          MR. CAMPBELL:  I have, your Honor.

9          THE COURT:  And have you discussed that charge with

10   Mr. Raskin and his colleagues?

11          MR. CAMPBELL:  I have, your Honor.

12          THE COURT:  And have they answered your questions to

13   the corporation's satisfaction?

14          MR. CAMPELL:  Thank you, yes.

15          THE COURT:  And do you understand the charges

16   against the company?

17          MR. CAMPBELL:  I do, your Honor.

18          THE COURT:  You told me a moment ago that your mind

19   is clear, that it's not clouded, and that remains the case?

20          MR. CAMPBELL:  That is correct.

21          THE COURT:  So let me ask now, Mr. Stokes is going

22   to summarize the charges and the elements of Count One of the

23   information.

24          MR. STOKES:  Your Honor, Count One charges RBS

25   Securities Japan Limited -- I'm sorry.  Count One charges the

1    Royal Bank Scotland Plc with committing wire fraud, in

2    violation of Title 18 United States Code Section 1343.

3            The elements of that count on Count One are:

4            First, there was a scheme or artifice to defraud or

5    to obtain money or property by materially false and

6    fraudulent pretenses, representations, or promises;

7            Second, that the defendant knowingly and willfully

8    participated in the scheme or artifice to defraud with the

9    intent to defraud; and

10           Third, that in furtherance of that scheme, the

11   defendant used or caused to be used an interstate or

12   international wire transmission.

13           Count Two of the criminal information, the elements

14   of that are:

15           First, that there was an agreement or mutual

16   understanding between two or more parties, the substantial

17   terms of which were to fix, raise, or stabilize prices;

18            Second, that the defendant knowingly, that is,

19   voluntarily and intentionally, became a member of the

20   agreement; and

21           Third, that the agreement affected interstate

22   commerce.

23           THE COURT:  Mr. Campbell, did you hear Mr. Stokes'

24   summary of the elements of the offenses?

25           MR. CAMPBELL:  I did, thank you.

1          THE COURT:  And do you understand the elements?

2          MR. CAMPBELL:  I do.

3          THE COURT:  Do you have any questions about them for

4    me?

5          MR. CAMPBELL:  I do not.

6          THE COURT:  Have you read the charge set forth in

7    the information?

8          MR. CAMPBELL:  I have.

9          THE COURT:  Would you like to have the information

10   read to you in court or do you waive the reading of the

11   information?

12         MR. CAMPBELL:  I waive the reading.  Thank you, your

13   Honor.

14         THE COURT:  Let me ask Madame Clerk to put RBS to

15   plea.

16         THE CLERK:  In the case of the United States of

17   America versus The Royal Bank of Scotland Plc, Criminal

18   Number 3:13CR74(MPS), as to Count One of the information

19   charging a violation of Title 18 United States Code Section

20   1343, and as to Count Two of the information charging a

21   violation of Title 15 United States Code Section 1, how do

22   you plead?

23         MR. CAMPBELL:  Not guilty.

24         THE CLERK:  Your Honor, the defendant has pled not

25   guilty to each of Counts One and Two of the information.

1          THE COURT:  Thank you.

2          I understand there's a written deferred prosecution

3     agreement.  I've received a copy of that agreement and I've

4     reviewed it.  I should also note that notwithstanding

5     footnote 1 of the deferred prosecution agreement, the parties

6     have provided me with a copy of Attachment C, which I have

7     received, reviewed, and which I will maintain in my custody,

8     under seal, pending resolution of this matter.

9          Mr. Campbell, have you read the deferred prosecution

10    agreement?

11         MR. CAMPBELL:  I have, your Honor.

12         THE COURT:  And do you understand what I've just

13    explained about my decision to maintain custody of Attachment

14    C under seal which is slightly different from the arrangement

15    described in footnote 1 of the deferred prosecution

16    agreement?

17         MR. CAMPBELL:  I do understand, your Honor.

18         THE COURT:  Have you discussed all of this with

19    Mr. Raskin and his colleagues?

20         MR. CAMPBELL:  I have extensively, your Honor.

21         THE COURT:  Do you understand the deferred

22    prosecution agreement?

23         MR. CAMPBELL:  I do, your Honor.

24         THE COURT:  Let me ask Mr. Stokes to summarize the

25    terms of the deferred prosecution agreement.

1          MR. STOKES:  Your Honor, the parties have entered

2    into a binding deferred prosecution agreement that provides:

3          That the defendant will pay a fine of 150 million

4    dollars, to be reduced by a fine assessed against RBS

5    Securities Japan pursuant to its guilty plea.

6          That in consideration of RBS's past and future

7    cooperation, as outlined in the deferred prosecution

8    agreement in paragraphs 5 and 6; RBS's payment of a fine; and

9    RBS's implementation of remedial measures as outlined in

10   paragraph 5 of the DPR, the government agrees that any

11   prosecution of RBS for the conduct set forth in the Statement

12   of Facts attached to the DBA be deferred for a period of two

13   years from the date of the filing of the information.

14         That the company waives any right to challenge venue

15   for this prosecution in the District of Connecticut.

16         That if the Government, in its sole discretion,

17   determines that RBS has breached the agreement, it may extend

18   the agreement for up to one year.  Moreover, in the event of

19   a breach, the commission of a felony by RBS, or the

20   government's determination that RBS is providing false

21   information, the government may prosecute RBS for any federal

22   criminal violation of which the government had knowledge,

23   including the charges in the information.

24         That the company agrees that, in the event the

25   government may prosecute it for the reasons just described,

1   it waives, for a three-year period, the defense of the

2   statute of limitations to any prosecution relating to the

3   conduct in the Statement of Facts that is not time barred by

4   the statute of limitations on the date of signing of the DPA,

5   and that would include the effect of any tolling agreements.

6        That the company admits the truth and accuracy of

7   the Statement of Facts attached to and incorporated in the

8   agreement, in the deferred prosecution agreement, as

9   Attachment A.

10       And that RBS has received no other promises beyond

11  those set forth in the DBA, and the plea agreement between

12  RBS Securities Japan and the Criminal Division of the

13  Department of Justice, which is incorporated into the DBA.

14       THE COURT:  Thank you, Mr. Stokes.

15       Let me ask you, Mr. Campbell, and you, Mr. Raskin,

16  whether you agree that what Mr. Stokes has just said is a

17  fair and accurate summary of the deferred prosecution

18  agreement?

19       MR. RASKIN:  It was a fair and accurate summary,

20  your Honor.

21       MR. STOKES:  I agree, your Honor.

22       THE COURT:  Mr. Campbell, other than the promises

23  and provisions recited by the government, has anyone made any

24  other promises that have caused RBS to enter into the

25  deferred prosecution agreement?

1          MR. CAMPBELL:  None, your Honor.

2          THE COURT:  Has anyone threatened the company to

3    induce it to enter into this agreement?

4          MR. CAMPBELL:  They have not.

5          THE COURT:  Mr. Campbell, are you satisfied that the

6    corporation understands the deferred prosecution agreement?

7          MR. CAMPBELL:  I'm fully satisfied, your Honor.

8          THE COURT:  And, Mr. Campbell, lastly, were you duly

9    authorized by RBS to sign the deferred prosecution agreement

10   on its behalf?

11         MR. CAMPBELL:  I am duly authorized.

12         THE COURT:  I find that the deferred prosecution

13   agreement was knowingly executed by a duly appointed

14   representative, authorized by The Royal Bank of Scotland plc

15   and, further, that The Royal Bank of Scotland plc knowingly

16   and voluntarily entered into the deferred prosecution

17   agreement with the government.

18         I also find that under Title 18 United States Code

19   Section 3161(h)(2), a delay of a period of two years in the

20   commencement of trial in this matter is appropriate for the

21   purpose of allowing the defendant to demonstrate its good

22   conduct, and I therefore exclude the time from today until

23   the date two years from now, specifically, April 10, 2015.  I

24   set a telephonic status conference in this case for February

25   13, 2015 at 2:00.

1        The deferred prosecution agreement, which was signed

2  previously, may now be filed.

3        MR. STOKES:  Thank you, your Honor.  May I approach?

4  This also includes the original signature pages.

5        THE COURT:  Yes, you may.

6        (Hands.)

7        THE COURT:  Very well.  Does counsel for either side

8  have any other matters for the Court to take up at this time?

9        MR. RASKIN:  Not from the defense, your Honor.

10       THE COURT:  Mr. Stokes, any other matters to be

11  taken up today?

12       MR. STOKES:  We do not, your Honor.

13       THE COURT:  Thank you all for your cooperation.

14       Mr. Campbell, thank you for your patience with our

15  procedures.

16       And at this time we're adjourned.

17       (Court adjourned.)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, Martha C. Marshall, RMR, CRR, hereby certify that

4    the foregoing pages are a complete and accurate transcription

5    of my original stenotype notes taken in the matter of United

6    States v. RBS Securities Japan Limited and United States v.

7    The Royal Bank of Scotland plc, which was held before the

8    Honorable Michael P. Shea, U.S.D.J, at 450 Main Street,

9    Hartford, Connecticut, on April 12, 2013.

10

11

12

13                            _____

                              Martha C. Marshall, RMR,CRR
14                            Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25